24 A.3d 802 (2011)
421 N.J. Super. 445
WILLINGBORO MALL, LTD., a New Jersey Limited Partnership, Plaintiff-Appellant/Cross-Respondent,
v.
240/242 FRANKLIN AVENUE, L.L.C., a New York limited liability company; Colonial Court Apartments, L.L.C., a Delaware limited liability company; Festival Market at Willingboro, L.L.C., a New Jersey limited liability company; Roy Ludwick; and Namik Marke, Defendants-Respondents/Cross-Appellants.
No. A-4598-09T2.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 2011.
Decided August 9, 2011.
*804 Glenn A. Weiner, argued the cause for appellant/cross-respondent (Klehr Harrison Harvey Branzburg, LLP, Cherry Hill, attorneys; Mr. Weiner and Michael A. Iaconelli, on the brief).
Joseph P. Grimes, Cherry Hill, argued the cause for respondents/cross-appellants (Grimes & Grimes, L.L.C., attorneys; Mr. Grimes, on the brief).
Before Judges CUFF, SIMONELLI and FASCIALE.
The opinion of the court was delivered by
CUFF, P.J.A.D.
Plaintiff, Willingboro Mall, Ltd., appeals from an order enforcing a settlement reached during a mediation session conducted pursuant to Rule 1:40-4. It argues that the rule precludes enforcement of an oral settlement reached at a non-binding mediation session. It also contends the alleged settlement was the product of coercion by the mediator. We hold that a settlement reached during a Rule 1:40 mediation session may be enforced, when the parties, as in this case, waived the confidentiality provisions of the Uniform Mediation Act, N.J.S.A. 2A:23C-1 to -13, specifically, N.J.S.A. 2A:23C-4 and Rule 1:40-4(d). In this case, the record compiled over the course of a four day evidentiary hearing clearly supports enforcement of the oral settlement agreement reached at the mediation session. We, therefore, affirm.
Plaintiff and defendants 240/242 Franklin Avenue, L.L.C. (Franklin); Colonial Court Apartments, L.L.C. (Colonial); Festival Market at Willingboro, L.L.C. (Festival); Roy Ludwick; and Namik Marke are commercial real estate entities and persons involved in management of these entities. On February 2, 2005, plaintiff agreed to sell property designated Lot 7.01, Block 2 on the Tax Map of Willingboro Township to Festival, which transferred the property to Franklin and Colonial as tenants-in-common. Along with the contract of sale, Festival, Franklin and others executed an indemnification agreement in which they agreed to certain obligations. Among those obligations were certain fines and penalties imposed on the property by Willingboro Township. On August 22, 2005, plaintiff filed a foreclosure complaint based on the alleged default by defendants to satisfy the municipal fines and penalties. In their answer, defendants asserted the alleged default had not occurred; therefore, plaintiff was not entitled to foreclosure.
The parties were referred to mediation by the General Equity judge. The parties selected a retired Superior Court Judge as *805 mediator, and attended a mediation session with their attorneys at the office of defendants' attorney on November 6, 2007. After several hours, the parties agreed to a settlement. On November 9, 2007, counsel for defendants wrote a letter to the General Equity judge to inform him that the parties had reached a settlement. The letter also related the following terms of the settlement:
1. Defendants, Festival Market, LLC (Festival) and/or 240/242 Franklin Avenue, LLC (Franklin) and/or Colonial Court Apartments, LLC (Colonial) jointly agree to pay plaintiff, Willingboro Mall, LTD., the sum of $100,000.00 in full and final settlement of the foreclosure matter . . .;
2. Defendants, Festival, Franklin, Colonial, Roy Ludwick, . . . and Namik Marke agree to execute a general release in favor of plaintiffs, Willingboro Mall, LTD., Allen Plapinger and Scott Plapinger for consideration of One ($1.00) Dollar;
3. Scott Plapinger, Allen Plapinger, Willingboro Mall, LTD. and Willingboro Mall GP LLC agree to execute a general release in favor of Festival, Franklin, Colonial, Roy Ludwick, . . . and Namik Marke for consideration of One Hundred Thousand ($100,000.00) Dollars;
4. Willingboro Mall Ltd agrees to execute and file of record Discharge of Mortgage to discharge its mortgage of record on Lot 7.01, Block 2, on the township Map of Willingboro, more particularly described in the attached schedule A;
5. Willingboro Mall Ltd agrees to mark cancelled the Mortgage, Note and Indemnification Agreement between the parties;
6. Counsel in the above captioned foreclosure matter will execute a Stipulation of Dismissal with Prejudice and file of record upon tender of fully executed releases in exchange for the stated consideration within two weeks of date hereof;
7. A separate Stipulation of Dismissal with Prejudice shall be executed by counsel of record Michael J. McKenna, Esquire and Michael A. Armstrong, Esquire in the matter of Willingboro Mall LTD, Willingboro Mall GP LLC, Sco[t]t Plapinger, Allen Plapinger, Roy Ludwick and Keith Ludwick v[.] Festival Market LLC, 240/242 Franklin Avenue LLC, Colonial Court Apartments LLC and Namik Marke Burlington County Superior Court Consolidated Docket Nos.: L-00581-06 and L-001067-05 (Penalty Action) dismissing Willingboro Mall, LTD., Willingboro Mall GP LLC, Scott Plapinger and Allen Plapinger from the litigation in view of Willingboro Township's acceptance of payment of fines in full in the amount of $250,000.00 pursuant to the Consent Order dated April 20, 2006 entered in the Penalty Action.
8. The parties agree to execute any and all additional documents to effectuate the intent of the parties within fourteen (14) days of the date of mediation.
By copy of this letter, we are notifying all judges and counsel of record of the terms of this settlement.
On November 20, 2007, defendants' attorney sent a letter informing the court and plaintiff he had escrowed $100,000 to fund the settlement and his clients had authorized disbursement of the settlement fund.
Plaintiff refused to consummate the settlement. It asserted that a final, binding settlement agreement had not been reached at the November 6, 2007 mediation session. On December 13, 2007, defendants filed a motion to enforce the mediated settlement agreement, and supported the motion with a certification of *806 their attorney and the mediator. Defendants also served plaintiff with an offer of judgment in the amount of $100,000 on February 8, 2008. Plaintiff rejected the offer.
Following discovery, a plenary hearing was conducted over four days. Five witnesses testified: the mediator; Robert Zindler, plaintiff's attorney at the mediation; Scott Plapinger, plaintiff's representative at the mediation; Bruce Plapinger, the member of Willingboro's Board of Managers with whom plaintiff's representative spoke during the mediation; and Alan Braverman, a person who served as an intermediary between the parties before the matter was referred to mediation. On April 14, 2009, Judge Michael Hogan issued a written opinion in which he found that "the parties did in fact arrive at a settlement of the underlying case and that their settlement is binding upon them." In doing so, Judge Hogan found that Scott Plapinger was not a credible witness, but the testimony offered by Zindler and the mediator was highly credible. On June 2, 2009, the judge also denied defendants' claim for counsel fees pursuant to N.J.S.A. 2A:15-59.1.
On appeal, plaintiff argues that Rule 1:40-4(i) prevents enforcement of any oral settlement because the terms of the settlement were not reduced to writing at the mediation session, a copy of the writing was not provided to each party, and the parties did not affix their signatures to the writing at the mediation session. In addition, plaintiff argues that enforcement of a settlement reached at a mediation session is contrary to the non-binding nature of the process. Alternatively, plaintiff asserts that any agreement reached during the mediation was coerced and not subject to enforcement. In response, defendants argue that there are no impediments to enforcement of the settlement and that the court should have found defendants were entitled to attorneys' fees.
A settlement is essentially a contract which is to be enforced, as written, absent a demonstration of fraud or other compelling circumstances. Honeywell v. Bubb, 130 N.J.Super. 130, 136, 325 A.2d 832 (App.Div.1974). The favor in which the law holds the settlement of litigation is well-established. See Herrera v. Twp. of S. Orange Vill., 270 N.J.Super. 417, 424, 637 A.2d 526 (App.Div.1993), certif. denied, 136 N.J. 28, 641 A.2d 1039 (1994); Pascarella v. Bruck, 190 N.J.Super. 118, 125, 462 A.2d 186 (App. Div.), certif. denied, 94 N.J. 600, 468 A.2d 233 (1983); Warren v. Employers' Fire Ins. Co., 100 N.J.Super. 464, 470, 242 A.2d 635 (App.Div.1968), rev'd on other grounds, 53 N.J. 308, 250 A.2d 578 (1969). It is the certitude provided by a settlement which encourages litigants to resolve their dispute amicably.
In recognition of the value placed on the settlement of litigation, the Legislature adopted the Uniform Mediation Act and the Supreme Court adopted Rule 1:40. Each recognizes the role of complementary dispute resolution (CDR) programs to assist parties to a litigated matter to resolve their dispute short of a trial. Indeed, Rule 1:40-1 expressly states the CDR programs, including mediation, "constitute an integral part of the judicial process[.]" The CDR programs recognized by the Court are available in the municipal courts, Rule 1:40-8, in Family Part matters, Rule 1:40-5, in civil, probate, and general equity actions, Rule 1:40-6, and in Special Civil Part matters, Rule 1:40-7.
N.J.S.A. 2A:23C-5 and Rule 1:40-4(d)[1] provide that the mediator, the parties, or any other participant in a mediation may *807 not disclose any mediation communication to anyone other than a participant in the mediation session. See also N.J.R.E. 519(a) and (b). The statute and the rule, however, recognize that the privilege may be waived by the parties. N.J.S.A. 2A:23C-5; R. 1:40-4(d); see also N.J.R.E. 519(b).
The purpose of mediation is to assist the parties to resolve their dispute without further resort to the judicial process. Accordingly, the ultimate goal of any mediation is settlement of some or all of the issues in dispute. When the parties have reached a settlement, the terms of the settlement are to be reduced to writing and a copy of the writing is provided to all parties. R. 1:40-4(i). The mediator is not required to send the written agreement to the judge referring the matter to mediation or report the settlement to the court, unless the case has been stayed pending mediation. Ibid. The express terms of the rule are as follows:
If the mediation results in the parties' total or partial agreement, it shall be reduced to writing and a copy thereof furnished to each party. The agreement need not be filed with the court, but if formal proceedings have been stayed pending mediation, the mediator shall report to the court whether agreement has been reached. If an agreement is not reached, the matter shall be referred back to court for formal disposition.
[R. 1:40-4(i).]
Notably, the rule does not provide that any agreement must be reduced to writing during the mediation session or that all parties must receive a copy of the agreement before they leave the mediation session as argued by plaintiff. Stated differently, the language of the rule does not prohibit the mediator or one of the parties to reduce the terms of the agreement to writing shortly after conclusion of the mediation session as occurred in this case. We reject the gloss advanced by plaintiff that would require contemporaneous reduction of the terms to writing and obtaining signatures on the document at the mediation.
Indeed, the position advanced by plaintiff is at odds with established precedent regarding the enforcement of settlement agreements. The Supreme Court and this court have consistently held that an agreement to resolve a matter will be enforced as long as the agreement addresses the principal terms required to resolve the dispute. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435, 608 A.2d 280 (1992); Bistricer v. Bistricer, 231 N.J.Super. 143, 148, 151, 555 A.2d 45 (Ch.Div. 1987); Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J.Super. 369, 376-77, 346 A.2d 419 (App.Div.1975). The addition of terms to effectuate the settlement that do not alter the basic agreement will not operate to avoid enforcement of an agreement to settle a litigated matter. Bistricer, supra, 231 N.J.Super. at 148, 151, 555 A.2d 45.
Plaintiff's position also ignores the reason for referring a matter to mediation. The process is utilized to afford the parties an opportunity to present their position before an experienced professional with the goal of resolving some or all of the differences between the parties. See State v. Williams, 184 N.J. 432, 441, 877 A.2d 1258 (2005). In contrast to arbitration, the mediation process is non-binding only in the sense that the process is not designed or intended to impose a result on any party. Indeed, such a result is the antithesis of the mediation process. Mediation is also not intended or designed as a meaningless and impotent detour on the way to judgment. The very purpose of the process is to resolve the dispute.
*808 Here, three days after the mediation session, defendants' attorney prepared and sent a letter stating the terms of the agreement reached by the parties. Two weeks later, he sent another letter informing defendants that he had placed the sum required to resolve the dispute in an escrow account. We hold that these writings, the first memorializing the terms of the settlement and the second notifying plaintiff of defendants' action to consummate the settlement, are within the intendment of the rule requiring the agreement to be reduced to writing. In other words, a delay of three days to memorialize a settlement reached through mediation does not vitiate the settlement. To be sure, preparation of a writing memorializing the agreement at the mediation session may be the preferable and advisable course. We must recognize, however, that some disputes may be complicated and the writing to memorialize the agreement may require some time to produce. We hesitate to interpret the writing requirement of Rule 1:40-4(i) so rigidly that it becomes an impediment to resolution of a matter through mediation.
We also conclude that the cases submitted by plaintiff in support of their argument that an oral agreement reached at a mediation may not be enforced are simply inapplicable due to the waiver by both parties of the confidentiality afforded to mediation. In Beazer East, Inc. v. The Mead Corp., 412 F.3d 429, 436 (3d Cir. 2005), cert. denied, 546 U.S. 1091, 126 S.Ct. 1040, 163 L.Ed.2d 857 (2006), the court did state that "an agreement is not binding unless it is reduced to writing." In so ruling, the court emphasized that any other rule would ignore and eviscerate the confidentiality provisions governing mediation. Ibid.; see also Barnett v. Sea Land Serv., Inc., 875 F.2d 741, 744 (9th Cir.1989) (declining to enforce an oral settlement agreement because proof of an oral agreement contravened the confidentiality of the proceeding). We agree with the Beazer court that N.J.S.A. 2A:23C-4 and Rule 1:40-4(d) present obstacles to enforcement of an oral agreement reached through mediation when the parties do not waive the confidentiality conferred on the proceeding. That case, however, is not before us.
Here, defendants first breached the confidentiality of the proceeding by supporting their motion to enforce the settlement with a certification from the mediator. Thereafter, the mediator was deposed and testified at trial. The extent of the waiver was the subject of rulings by Judge Bookbinder during the deposition of the mediator and at trial by Judge Hogan. We do not understand any argument advanced by plaintiff to contest those rulings. Therefore, having waived the confidentiality normally afforded to such proceedings, the matter proceeded in the normal course to determine whether the parties had reached a settlement.
As such, we will affirm the factual findings of the trial judge, if those findings are supported by substantial credible evidence in the record. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974). Applying that standard, we affirm. The trial judge had the opportunity to hear and view the witnesses. He expressly held that he found the testimony of the mediator "highly credible." By contrast, he found the testimony of Scott Plapinger of dubious credibility. In reaching these findings, the judge explained that the mediator's testimony was forthright, consistent with contemporaneous notes, and without any palpable motive to deceive. The judge also found the testimony of plaintiff's attorney at the mediation candid and he found his testimony that Scott Plapinger agreed to the settlement "very credible." By contrast, he commented that the longer *809 Scott Plapinger testified "the edgier he physically became." Scott Plapinger avoided direct answers to questions posed by defendants' counsel, but was highly responsive to questions posed by his attorney. In fact, the judge described Scott Plapinger's answers on cross-examination as "flippant, sometimes to the point of arrogance." The judge summarized his impression of Scott Plapinger as follows: "he was an experienced businessman who is very skilled at manipulating the facts to suit his needs." In the end, the judge found that the parties had reached a settlement at the mediation, the terms of the agreement were as set forth in the November 9, 2007 letter prepared by defendants' attorney to Zindler and the court, and that Scott Plapinger's assent to the settlement was not the product of coercion.
A settlement agreement achieved through coercion, fraud, deception, undue pressure, or unseemly conduct will not be enforced. Wolkoff v. Villane, 288 N.J.Super. 282, 291, 672 A.2d 242 (App.Div.1996); Peskin v. Peskin, 271 N.J.Super. 261, 276, 638 A.2d 849 (App.Div.), certif. denied, 137 N.J. 165, 644 A.2d 613 (1994). Here, however, the trial judge found that Scott Plapinger was a veteran and knowledgeable businessman who agreed to a settlement with full knowledge of its terms and consequences. These findings are fully supported by the record, and we affirm.
Finally, in their cross-appeal, defendants appeal from the order denying their application for attorneys' fees pursuant to N.J.S.A. 2A:15-59.1, the frivolous litigation rule, or Rule 4:58-1, the offer of judgment rule. These arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] Rule 1:40-4(c) also establishes an evidentiary privilege similar to N.J.R.E. 408.